IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHATTERBOX, LLC, an Idaho limited liability corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. CV 06-512-S-LMB |
| v. | ) ) | **MEMORANDUM DECISION AND ORDER** |
| PULSAR ECOPRODUCTS, LLC, an Ohio limited liability corporation and BAZZILL BASICS PAPER, INC., an Arizona corporation, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Currently pending before the Court are a Motion to Dismiss Plaintiff's Complaint (Docket

No. 12) filed by Defendant Pulsar Ecoproducts, LLC ("Pulsar"), in which Defendant Bazzill

Basics Paper, Inc. ("Bazzill") has joined (*see* Docket No. 18), and Defendant Bazzill's Motion to

Dismiss Plaintiff's Complaint (Docket No. 18).  Having carefully reviewed the record, considered

oral arguments, and otherwise being fully advised, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER** - 1

# I.

## BACKGROUND[1]

Plaintiff Chatterbox, LLC ("Plaintiff" or "Chatterbox") markets scrapbooking products, including paper, stickers, scrapbooking kits, and other supplies.  *Complaint*, p. 2 (Docket No. 1).  Pulsar provides design, manufacturing, importing, logistics, and shipping services for businesses.  *Id.*  Beginning in 2003, Chatterbox sourced some of its scrapbooking materials and supplies through Pulsar and Pulsar represented to Chatterbox that it would maintain all Chatterbox projects and communications in confidence.  *Id.* at p. 3.

In the context of this relationship, Chatterbox provided Pulsar with a mockup for a product it called a Tribute album.  *Id.* at p. 3.  "The idea was to bundle together various scrapbooking materials to allow a group of individuals to create a book that would celebrate an individual at an important moment in their lives."  *Id.* at pp. 3-4.  After Pulsar quoted Chatterbox with a price to create the initial Tribute album, Chatterbox determined that the price was too high and decided to delay commercial production.  *Id.* at p. 4.  A second price quote was provided by Pulsar in 2004, which Chatterbox also felt was too high, and Chatterbox again decided to delay commercial production.  *Id.*  Chatterbox alleges in this action that Pulsar subsequently disclosed the Tribute

---

[1]  When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, facts alleged in the complaint are presumed to be true.  *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007).  Accordingly, the Background section cites only to facts alleged in Plaintiff's Complaint.

album idea to Bazzill, a competitor of Chatterbox, and Bazzill used the idea to create its own line of albums called Sharebooks. *Id.*

On December 19, 2006, Plaintiff filed a Complaint setting forth five causes of action: (1) violation of the Idaho Trade Secrets Act, (2) fraud, (3) unjust enrichment, (4) unfair competition, and (5) common law unfair competition. *Id.* at pp. 6-9. Both Pulsar and Bazzill responded with motions to dismiss (Docket Nos. 12, 18).

## II.

## PULSAR'S MOTION TO DISMISS

### A.    Standards of Law

Pulsar seeks dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *See Smilecare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 784 (9th Cir. 1996). "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *Id.* at 783-84. It is well established, however, that Rule 12(b)(6) motions are viewed with disfavor, *see, e.g.*, *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), and that a court should dismiss a case without leave to amend only in "extraordinary" cases, *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981).

**MEMORANDUM DECISION AND ORDER** - **3**

**B.** **Preemption**

Pulsar argues that Plaintiff's fraud, unjust enrichment, and unfair competition claims are preempted by the Idaho Trade Secrets Act ("ITSA").[2]  Plaintiff's trade secrets claim is based on the alleged acquisition and disclosure of the Tribute album idea by Pulsar, and Bazzill's alleged use of the idea with knowledge of Plaintiff's interest in the idea.  *Complaint*, p. 6 (Docket No. 1). Likewise, all of Plaintiff's other claims rely on, to varying degrees, the same set of facts describing this alleged acquisition, disclosure, and subsequent use.

Section 48-806(1) of the Idaho Trade Secrets Act (the "displacement provision") explains the ITSA's effect on other law: "(1) Except as provided in subsection (2) of this section, this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil liability remedies for misappropriation of a trade secret."  However, the ITSA "does not affect . . . [o]ther civil remedies that are not based upon misappropriation of a trade secret."  Idaho Code § 48-806(2).  This language is almost identical to that of the Uniform Trade Secrets Act ("UTSA"), which was adopted by Idaho in enacting the ITSA.[3]  The issue presented here is one of first impression as neither the Supreme Court of Idaho nor the United States Court for the District of Idaho have addressed this issue.  Although there are no Idaho cases interpreting the displacement

---

[2]  Defendant Bazzill has joined in Pulsar's Motion to Dismiss and relies, in large part, on Pulsar's arguments.  Thus, this section will discuss Pulsar's arguments, but any dismissal of Plaintiff's claims will apply to both Pulsar and Bazzill, with the exception of the fraud claim which has been asserted only against Pulsar.

[3]  Since its creation, forty-five states, including Idaho, have adopted one version or another of the UTSA.  *See* Uniform Law Commissioners, A Few Facts about the Uniform Trade Secrets Act, http://www.nccusl.org/update/uniformact_factsheets/uniformacts-fs-utsa.asp (last visited May 1, 2007).

**MEMORANDUM DECISION AND ORDER** - 4

provision, there are cases from several other jurisdictions explaining the impact of similar provisions.

One line of cases holds that, until it is determined whether the allegedly misappropriated information constitutes a trade secret, the question of preemption cannot be addressed.  *See, e.g.*, *Burbank Grease Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 793 (Wis. 2006)[4]; *Genzyme Corp. v. Bishop*, 463 F. Supp. 2d 946, 949 (W.D. Wis. 2006); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc*., 295 F. Supp. 2d 430, 437 (D. Del. 2003) (considering a Rule 12(b)(6) motion and holding that, "even if [defendant's] claims for patent title, conversion, and unjust enrichment are preempted by [the California Uniform Trade Secrets Act ("CUTSA")], [defendant] may plead in the alternative, or assert alternative recoveries, in the event that certain information does not qualify as a 'trade secret' under CUTSA")[5]; *Stone Castle Fin'l v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 658-59 (E.D. Va. 2002) (explaining that "where courts have found preemption on a motion to dismiss, they repeatedly establish that the information in issue-as alleged-constitutes trade secrets before reaching the preemption question,"

---

[4]  Although the analysis and reasoning of the Wisconsin Supreme Court's majority opinion in *Burbank Grease* is both logical and well-reasoned, it is very important to note that court was sharply divided.  In a dissenting opinion in which the Chief Justice joined, the dissent referred to the majority's "disregard of the legislative directive that [Wisconsin's Uniform Trade Secrets Act] be interpreted to 'make uniform the law relating to misappropriation of trade secrets among the states,'" charged that the majority acted "unabashedly" in its "disregard of the legislative directive," and accused the majority of making "specious" assertions and "weak[] attempts."  717 N.W.2d at 799-800 (Bradley, J., dissenting) (citation omitted).  To say that court was "sharply divided" is probably an understatement.

[5]  In a later decision, however, the court, while acknowledging its previous holding in *Callaway Golf*, held that the alternative claims either were based on trade misappropriation and preempted by the CUTSA or were precluded as a matter of law.  *See Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc*., 318 F. Supp. 2d 216, 219-21 (D. Del. 2004).

**MEMORANDUM DECISION AND ORDER** - 5

and "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by [Virginia's version of the uniform UTSA]"); *Nucor Corp. v. Bell*, ___ F. Supp. 2d ___, 2007 WL 1020842, *6-8 (D. S.C. Jan. 30, 2007); *Cenveo Corp. v. Slater*, 2007 WL 527720, at *3 (E.D. Pa. Feb. 12, 2007).

On the other side of the issue,"[a]nother line of cases holds that determining whether the allegedly misappropriated information constitutes a trade secret is irrelevant for preemption purposes because the UTSA preempts all claims based upon the unauthorized use of information, even if the information does not meet the statutory definition of a trade secret." *Mediware Information Sys., Inc. v. McKesson Information Solutions, LLC*, 2007 WL 926142, *2 (D. Kan. Mar. 26, 2007) (declining to address the issue because the tortious interference claims alleged by the plaintiff are not "based upon misappropriation of a trade secret" and thus are not preempted). *See, e.g.*, *AirDefense, Inc. v. AirTight Networks, Inc*., 2006 WL 2092053, *3 (N.D. Cal. July 26, 2006) (agreeing with "multiple federal courts" that claims based on the same factual allegations as the claim for misappropriation of trade secrets are preempted and evaluating claims when ruling on a motion to dismiss); *Mortgage Specialists, Inc. v. Davey*, 904 A.2d 652, 664 (N.H. 2006); *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D.Del. 2005) ("Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret."); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (upholding the district court's determination that common law claims based on "the same alleged wrongful conduct as the trade secrets claims" are precluded); *Thomas & Betts Corp. v. Panduit Corp*., 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (rejecting an argument that "preemption is improper because the confidential

**MEMORANDUM DECISION AND ORDER** - **6**

information taken by [defendant] may not rise to the level of a trade secret," and explaining that

this "theory would render [the displacement provision] meaningless, for it would forbid

preemption of state law claims until a final determination has been made with respect to whether

the confidential information at issue rises to the level of a trade secret"); *Glasstech, Inc. v. TGL

Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 730 (N.D. Ohio 1999).[6]

The line of cases cited in the preceding paragraph has been referred to as the majority

view.  *See, e.g., Mortgage Specialists*, 904 A.2d at 664 (concluding that a provision in New

Hampshire's Uniform Trade Secrets Act ("NHUTSA") identical to Idaho Code Section 48-406

when "viewed in the context of the overall legislative scheme and construed in a manner that

effectuates the purpose of making uniform the law among States that have adopted the UTSA,

provides that the NHUTSA preempts claims that are based upon the unauthorized use of

information, regardless of whether that information meets the statutory definition of a trade

secret").  Because the Idaho Legislature's purpose in enacting the ITSA was to promote the goal

of uniformity, it is appropriate for courts applying Idaho law to follow the majority view in

interpreting the displacement provision.  *See* SB1026, 1981 Idaho Laws Ch. 220 § 1 (Statement of

Purpose) (stating that the ITSA is "designed to give certainty to the otherwise vague and

---

[6] *See also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (observing that with the passage of Illinois' Trade Secrets Act, which contains a provision almost identical to Idaho Code 48-406, "Illinois . . . abolished all common law theories of misuse of [secret] information"); *DSMC, Inc. v. Convera Corp.*, ___ F. Supp. 2d ___, 2007 WL 902034 at *12 (D. D.C. Mar. 27, 2007) (determining that because plaintiff's "conspiracy claims allege conspiracy to misappropriate trade secrets, both the common law and statutory conspiracy claims are preempted"); *Greif Inc. v. MacDonald*, 2007 WL 679040 (W.D. Ky. Mar. 1, 2007) (explaining that "claims of unfair competition, tortious interference, breach of fiduciary duty, and civil conspiracy are preempted to the extent that they are based upon the misappropriation of trade secrets").

**MEMORANDUM DECISION AND ORDER** - 7

uncertain law of trade secrets," and that "[b]y increasing certainty, it should reduce the amount of

litigation in Idaho's courts."); SB 1448, 1990 Idaho Laws Ch. 274, § 3 (Statement of Purpose)

(explaining that the stated purpose was to "improve the [ITSA] and to continue our goal of

uniformity").

Moreover, at least three district courts in the Ninth Circuit have determined that a state's

displacement provision preempts actions such as those for unjust enrichment.  *See, e.g.*, *Digital*

*Envoy, Inc. v. Google*, *Inc*., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (finding "that

California's statute . . . preempts Digital's claims for unfair competition and unjust enrichment

since those claims are based on the same nucleus of facts as the misappropriation of trade secrets

claim for relief"); *Hutchison v. KFC Corp*., 809 F. Supp. 68 (D. Nev. 1992) (determining that the

"Uniform Trade Secrets Act displaced civil remedies for unjust enrichment, unfair competition

and breach of confidential relationship based on alleged misappropriation of trade secret");

*AirDefense*, 2006 WL 2092053, *3 (N.D. Cal. July 26, 2006).  Here, as explained above,

Plaintiff's claims for unjust enrichment and unfair competition are based on the same nucleus of

facts as its trade secrets claim and, therefore, these should be dismissed as preempted by the Idaho

Trade Secrets Act.  *See, e.g., Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp.2 d 1329,

1335-36 (S.D. Fla. 2002).

Although the fraud claim includes the allegation that the information revealed was a trade

secret and/or amounted to confidential information, it includes other allegations that Pulsar

represented it would keep confidential all information sent to it by Plaintiff in the course of their

**MEMORANDUM DECISION AND ORDER** - 8

relationship (regardless of its status as a trade secret).[7]  It is this alleged representation of

confidentiality, and not the nature of the confidential information, that is critical to Plaintiff's

fraud claim.  For this reason, and because the comment notes to the UTSA[8] suggest that claims

such as this fraud claim may be brought along with a trade secrets claim, Defendant Pulsar's

Motion to Dismiss the fraud claim should be denied.  *See, e.g.*, *Hecny Transp., Inc. v. Chu*, 430

F.3d 402, 404-05 (7th Cir. 2005) (explaining "the dominant view is that claims are foreclosed

only when they rest on the conduct that is said to misappropriate trade secrets," but concluding

that "[a]n assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and

breach of the duty of loyalty that would be sound even if the customer list were a public record");

*AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001) (noting that the Illinois

trade secrets act "only preempts actions predicated on misuse of secret information," and

"[c]ommon law claims based on different theories are still permissible"); *Frantz v. Johnson*, 999

P.2d 351, 358 n.3 (Nev. 2000) (noting that the Nevada court did not agree that "the UTSA

provides a blanket preemption to all claims that arise from a factual circumstance possibly

---

[7]  Plaintiff's fraud claim does not specifically mention the term "trade secret" but the allegations of trade secret misappropriation are incorporated by reference.  *Complaint*, ¶ 37 (Docket No. 1).  However, the specific fraud allegations state that "Pulsar made a representation regarding confidentiality to Chatterbox that was false."  *Id.* at ¶ 38.  By way of comparison, the unfair competition claims allege that Defendants accessed, obtained, and/or used "Chatterbox's proprietary, confidential and trade secret information."  *Id.* at ¶¶ 44, 47.

[8]  The UTSA was intended to codify "the basic principles of common law trade secret protection."  National Conference of Commissioners on Uniform State Laws, Uniform Trade Secrets Act With 1985 Amendments, p. 2, *available at* http://www.law.upenn.edu/bll/ulc/ fnact99/1980s/utsa85.pdf (last visited May 1, 2007).  The UTSA comment on the displacement provision provides that the UTSA "is not a comprehensive statement of civil remedies." *Id.* at p. 15.  The comment also explains that the UTSA "does not apply to a duty imposed by law that is not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal."  *Id.*

**MEMORANDUM DECISION AND ORDER** - **9**

involving a trade secret," and explaining that "[t]here may be future instances where a plaintiff will be able to assert tort claims . . . that do not depend on the information at issue being deemed a trade secret, and thus are not precluded by the UTSA"); *Paint Brush Corp., Parts Brush Div. v. Neu*, 599 N.W.2d 384, 392 (S.D. 1999) (finding that a claim for deceit was not preempted because "the alleged deceptive conduct could have taken place whether or not a trade secret was being misappropriated").[9]

The Court recognizes that this decision will limit Plaintiff's choices of remedies for the alleged violations.  However, other courts have faced the same query and have found, after making an analysis similar to that made here, that upholding the preemption provision fits with the purpose of the UTSA, which is intended to provide uniformity and clarity in misappropriation of information cases.  For example, a federal court in Michigan explained the rationale for preemption in *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003):

> Because the purpose of the UTSA is "to preserve a single tort cause of action under state law for misappropriation . . . and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation," *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D.Del. 1991), allowing otherwise displaced tort claims to proceed on the basis that the information may not rise to the level of a trade secret would defeat the purpose of the UTSA.  Thus, "[u]nless [Midwest] misappropriated a (statutory) trade secret, [it] did no legal wrong."

---

[9] It is recognized that some courts have found fraud claims preempted.  *See, e.g., Weins v. Sporleder*, 605 N.W.2d 488 (S.D. 2000) (finding a fraud claim was necessarily a part of the misappropriation of a trade secret claim).  However, the Court finds the reasoning of the Seventh Circuit Court Appeals' decision in *Hecny*, 430 F.3d 402 to be more persuasive than the reasoning of cases like *Weins*.

**MEMORANDUM DECISION AND ORDER** - 10

*Composite Marine Propellers, Inc.*, 962 F.2d at 1265.[10]

For all of these reasons, it is appropriate to apply the displacement provision of Idaho law to the present action.  Accordingly, Pulsar's Motion to Dismiss is granted as to Plaintiff's unjust enrichment[11] and unfair competition[12] claims, but is denied as to Plaintiff's fraud claim.

**C.      Trade Secrets Claim**

Pulsar argues that Plaintiff's Tribute album "idea" "has been generally known and readily discernable from public sources, and thus is not subject to trade secret application."  *Pulsar's Memorandum in Support*, p. 2, n. 1 (Docket No. 12-2).  The information on which Pulsar relies to demonstrate that the Tribute idea is generally known consists of articles from newspapers and scrapbooking journals attached as exhibits to its briefs.  (*See* Docket Nos. 12-2 & 33-4 - 33-6).  "Information is readily ascertainable [and thus not protected as a trade secret] if it is available in

_____

[10]  *See also Mortgage Specialists*, 904 A.2d at 664 (explaining that New Hampshire's Trade Secrets Act "essentially creates a system in which information is classified only as either a protected 'trade secret' or unprotected 'general . . . knowledge'," and that "[a]lthough this result may seem harsh . . . individuals and corporate entities to protect their valuable commercial information *contractually,* regardless of whether such information meets the statutory definition of 'trade secret'") (citations omitted)).

[11]  To the extent Plaintiff's unjust enrichment allegation was not made as a separate claim but was included as a requested remedy, it will remain.  *See* Idaho Code § 48-803 ("Damages [for trade secret misappropriation] can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.").

[12]  Because the unfair competition claims have been dismissed pursuant to the ITSA's displacement provision, it is not necessary to address Defendants' alternative arguments for dismissal of these claims.

**MEMORANDUM DECISION AND ORDER** - 11

trade journals, reference books, or published materials."[13]  *Basic American, Inc. v. Shatila*, 133 Idaho 726, 734, 992 P.2d 175, 183 (1999) (quoting Uniform Trade Secret Act § 1, Commissioners' Comment, 14 uniform Laws Annotated 439 (1990) (internal quotation marks omitted)).

Pulsar has requested that this Court take judicial notice of the newspaper and journal materials attached to its brief.  A court, under certain circumstances, must take judicial notice if a party requests it and supplies the court with the requisite information.  Fed. R. Evid. 201(d).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court of Appeals for the Ninth Circuit has taken judicial notice of adjudicative facts appearing in newspapers, *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 459 (9th Cir. 1995), and district courts have taken judicial notice of items posted on web pages, *see, e.g., Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005).  However, even considering the information submitted by Pulsar, it does not establish that the specific idea Plaintiff had to bundle together certain materials to make a Tribute album was readily ascertainable.  Thus, even with the information in the publications submitted here, at this stage of the litigation it is not appropriate for the Court to engage in a weighing of facts to determine whether Plaintiff's Tribute album is readily ascertainable and/or generally known.

---

[13]  "Without a proven trade secret there can be no misappropriation, even if the defendants' action was wrongful."  *Basic American*, 133 Idaho at 734, 992 P.2d at 183 (citation and internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER** - 12

Pulsar also argues that Plaintiff has failed to allege that a specific trade secret actually exists. *Pulsar's Memorandum in Support*, p. 5 (Docket No. 12-2). "In order to *prevail* in a misappropriation action under the [Idaho Trade Secrets Act], the plaintiff must show that a trade secret actually existed."[14] *Basic American*, 133 Idaho at 734, 992 P.2d at 183 (1999) (emphasis added). However, it is beyond reasonable dispute that all a plaintiff needs to provide to survive a motion to dismiss is allege in a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Plaintiff claims an idea for a Tribute scrapbook as a trade secret. "The idea was to bundle together various scrapbooking materials to allow a group of individuals to create a book that would celebrate an individual at an important moment in their lives." *Id.* at pp. 3-4. "The idea was not confined to one particular occasion but encompassed a series of products that were to be marketed under the mark TRIBUTE." *Id.* at p. 4.

The Supreme Court of Idaho has recognized that "[i]nformation consisting of multiple elements which are each readily ascertainable may still be trade secrets when considered as a whole." *Basic American*, 133 Idaho at 737, 992 P.2d at 186. Because all that is required at the pleading stage is a short and plain statement of the facts, it is not clear whether Plaintiff has used the readily ascertainable information about albums that celebrate an individual and/or event and combined them in a way that would be considered a trade secret. Accordingly, considering the disfavor with which Rule 12(b)(6) motions are viewed, *Gilligan*, 108 F.3d at 249, it is not

---

[14] "Without a proven trade secret there can be no misappropriation, even if the defendants' action was wrongful." *Basic American*, 133 Idaho at 734, 992 P.2d at 183 (citation and internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER** - 13

appropriate to dismiss Plaintiff's trade secret claim at this stage of the litigation for failure to state

a claim upon which relief may be granted.  Accordingly, Defendants' motion for dismissal of the

trade secrets claim is denied.

**D.      Fraud Claim**

Pulsar argues that Plaintiff has failed to allege facts setting forth its fraud claim with

particularity.  "In all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind

of a person may be averred generally."  Fed. R. Civ. P. 9(b).  The elements of fraud are: (1) a

statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge

of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity

of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.  *Hines*

*v. Hines*, 129 Idaho 847, 851, 934 P.2d 20, 24 (Idaho 1997).

Plaintiff alleged that Pulsar made assurances of confidentiality, the representations were

false in light of Pulsar's disclosure of Plaintiff's Tribute idea, and Plaintiff revealed the Tribute

idea to Pulsar based on Pulsar's representation of confidentiality.  *Complaint*, ¶¶ 11-16, 19, 29-31

(Docket No. 1).  Plaintiff also recites the representations contained on Pulsar's website and notes

that two Pulsar employees admitted that Pulsar had disclosed the Tribute idea to Bazzill.  *Id.* at ¶¶

12, 29-30.  These allegations are "specific enough to give defendants notice of the particular

misconduct which is alleged to constitute the fraud charged so that they can defend against the

charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d

**MEMORANDUM DECISION AND ORDER** - **14**

727, 731 (9th Cir. 1985).  For this reason, Pulsar's request to dismiss Plaintiff's fraud claim on the basis of failure to allege the claim with particularity is denied.

## III.

## BAZZILL'S MOTION TO DISMISS

Bazzill requests that Plaintiff's claims against it be dismissed for lack of personal jurisdiction because Bazzill is an Arizona corporation, has no facilities, assets, employees, or independent contractors in Idaho, and because Bazzill had no idea that Chatterbox may have been the source of the Sharebook idea.  *Bazzill's Memorandum in Support*, p. 2 (Docket No. 18); *see also Jones Declaration* (Docket No. 18-2).  Additionally, Bazzill has not done business with Plaintiff in Idaho.  *Jones Declaration*, ¶ 6 (Docket No. 18-2).

Plaintiff, however, points out that Plaintiff purchases card stock [paper] from Bazzill for resale in Idaho," and Plaintiff also "markets in Idaho Bazzill paper through [Plaintiff's] catalog and website."  *Wilkins Affidavit*, ¶¶ 2-3 (Docket No. 35).  *See also Complaint*, ¶ 28 (Docket No. 1).  In addition, Bazzill "manufactures paper in [Plaintiff's] designer colors and markets the paper to retailers, including potential retailers located in Idaho."  *Wilkins Affidavit*, ¶ 3 (Docket No. 35).  Finally, there is evidence in the record that some of Bazzill's paper products are currently being sold in Idaho stores.  *Id.* at ¶¶ 4-5.

**A.      Standards of Law**

**1.      Motion to Dismiss**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

plaintiff bears the burden of demonstrating that jurisdiction is proper.  *Rio Props., Inc. v. Rio Int'l*

*Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  Where the motion is based on written materials

rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of

jurisdictional facts.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

2004).  In such cases, a court need only inquire into whether the plaintiff's pleadings and

affidavits make a prima facie showing of personal jurisdiction.  *Id.*  Although the plaintiff cannot

rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be

taken as true.  *Id.*  "Conflicts between the parties over statements contained in affidavits must be

resolved in the plaintiff's favor."  *Id.*

**2.      Personal Jurisdiction**

The Court's power to exercise personal jurisdiction over a non-resident defendant is

limited both by the applicable state personal jurisdiction statute (long arm statute) and the Due

Process Clause.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002); *Sher v.*

*Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990).  However, as the Ninth Circuit has previously

recognized, the Idaho Legislature intended in adopting its long arm statute to exercise all of the

jurisdiction available under the Due Process Clause.  *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir.

1987).  Thus, the state and federal limits are co-extensive, and an independent review of whether

jurisdiction exists under the long arm clause is unnecessary.  *See Sinatra v. Nat'l Enquirer*, 854

**MEMORANDUM DECISION AND ORDER** - **16**

F.2d 1191, 1194 (9th Cir. 1988).

Due process requires that in order for a non-resident defendant to be haled into court the defendant must have certain minimum contacts with the forum state such that the traditional notions "'of fair play and substantial justice'" are not offended.  *See Sher*, 911 F.2d at 1361 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  Additionally, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  The focus is primarily on "the relationship among the defendant, the forum, and the litigation."  *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

States may exercise general or specific jurisdiction over non-resident defendants.  *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984).  General jurisdiction can be asserted when the defendant's activities in the forum state are "continuous and systematic" or "substantial."  *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 447 (1952); *see also Lake*, 817 F.2d at 1420.

When specific jurisdiction is asserted, a three part test applies:  (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.  *Lake*, 817 F.2d at 1421.  The plaintiff bears the burden of satisfying the first two

**MEMORANDUM DECISION AND ORDER** - 17

prongs of the test. *Sher*, 911 F.2d at 1361. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

**B.     General Jurisdiction**

General jurisdiction exists if Bazzill's contacts with Idaho are considered "continuous and systematic," *Helicopteros*, 466 U.S. at 416, and the exercise of jurisdiction satisfies "traditional notions of fair play and substantial justice." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). "The standard for establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citation and quotation marks omitted); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).

In support of its claim of jurisdiction, Plaintiff points out that it "purchases card stock [paper] from Bazzill for resale in Idaho," and Plaintiff also "markets in Idaho Bazzill paper through [Plaintiff's] catalog and website." *Wilkins Affidavit*, ¶¶ 2-3 (Docket No. 35). *See also Complaint*, ¶ 28 (Docket No. 1). Because these activities are those of *Plaintiff*, they will not be considered as a basis for jurisdiction over Bazzill. It is *Bazzill's* activities in Idaho that are to be considered when determining whether it is appropriate to exercise personal jurisdiction.

In addition, however, Bazzill "manufactures paper in [Plaintiff's] designer colors and markets the paper to retailers, including potential retailers located in Idaho," and some of

**MEMORANDUM DECISION AND ORDER** - **18**

Bazzill's paper products are currently being sold in Idaho stores. *Wilkins Affidavit*, ¶¶ 3-5
(Docket No. 35). On the other hand, only .008 of 1% of Bazzill's gross sales are from sales to
Idaho companies and those sales are made by an independent sales representative located in
Colorado. *Niemyski Affidavit*, ¶¶ 2, 6 (Docket No. 41-2).

The Ninth Circuit Court of Appeals has upheld a district court's determination that sales
and sales promotions by independent sales representatives may not be enough to assert general
jurisdiction. *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984)
(explaining that the defendant's contacts "essentially constitute sales and sales promotion by
independent nonexclusive sales representatives," and "[t]his would not be sufficient to assert
jurisdiction on an unrelated cause of action"). *See also Bancroft*, 223 F.3d at 1086 (holding that
"engaging in commerce with those who do business in the forum state is not in and of itself the
kind of activity that approximates physical presence within the state's borders"); *Gates Learjet
Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (focusing upon the "economic reality" of
the defendants' activities rather than a mechanical checklist, and determining that their activities
in the forum state "were more occasional than continuous, and more infrequent than systematic");
*Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (explaining that
"[s]imple commercial contacts, unrelated to [plaintiff's] trade secret claims are insufficient to
establish personal jurisdiction").

Applying the reasoning of *Congoleum* to the present case, Plaintiff has not established
continuous and systematic contacts such that the exercise of general jurisdiction over Bazzill
would satisfy traditional notions of fair play and substantial justice. The Court may still exercise

**MEMORANDUM DECISION AND ORDER** - **19**

jurisdiction, however, if Plaintiff can demonstrate the necessary elements of specific jurisdiction.

## C.    Specific Jurisdiction

As explained above, Plaintiff must meet its burden on three elements to establish specific jurisdiction, the first of which is purposeful availment.  Purposeful availment requires some kind of affirmative conduct by Bazzill which allows or promotes the transaction of business within the forum state.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986). Thus, if Bazzill directly solicits business in Idaho, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of Idaho's laws.  *Id.*

Here, it is not Bazzill, but rather its independent contractor located in another state, who solicits business in Idaho.  In addition, Douglas Jones, the president of Bazzill, states that Bazzill has not "done business with [Plaintiff] in Idaho," and although "Bazzill created a line of paper in the Chatterbox signature colors, [it] did not create the line of paper under contract with [Plaintiff]."  *Jones Declaration*, ¶ 6 (Docket No. 18-2).

Exercise of specific jurisdiction may be appropriate, however, where a foreign act is both aimed at and has effect in the forum state.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1071 (C.D. Cal. 2004).  To meet this "effects test" for specific jurisdiction, Bazzill must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state.  It is notable though that not every "foreign act with foreseeable effects" in the forum state will support specific jurisdiction.  *Dole Food Co.*, 303 F.3d at 1112 (citation omitted).

**MEMORANDUM DECISION AND ORDER** - **20**

Bazzill does not dispute that if it expressly aimed its conduct at an Idaho resident in Idaho, knowing that the harm would be felt in Idaho, that would create specific jurisdiction for claims arising out of that conduct. *Bazzill's Reply*, p. 5 (Docket No. 41). Bazzill argues, however, that Plaintiff has not provided any evidence to contradict the testimony of Douglas Jones, president of Bazzill, that Pulsar told him "Lisa Bearnson and Becky Higgins of Coterie had developed the product and that Coterie had decided to discontinue its involvement in the project." *Jones Declaration*, ¶ 9 (Docket No. 18-2). Mr. Jones also stated that Plaintiff "was never mentioned by Pulsar in connection with the product or idea, and if [Plaintiff] was the source of the idea, we at Bazzill were unaware of it." *Id.* at ¶ 10. Bazzill explains that it "merely accepted a proposal in Arizona from an Ohio company (Pulsar) to private label and distribute a product." *Bazzill's Motion to Dismiss*, p. 6 (Docket No. 18).

Although conflicts between the parties over statements and evidence contained in affidavits must be resolved in Plaintiff's favor, and uncontroverted allegations in the Complaint must be taken as true, Plaintiff cannot rest on the bare allegations of its Complaint. *Schwarzenegger*, 374 F.3d at 800; *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (emphases added) ("*Unless directly contravened*, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."). In the present case, Plaintiff has offered no statement in an affidavit or declaration that conflicts with Mr. Jones' statement about Bazzill's lack of knowledge. The mere fact that the Complaint alleges that Bazzill knew the Sharebook idea came from Plaintiff is not sufficient to indicate that Bazzill had any knowledge of Plaintiff's connection

**MEMORANDUM DECISION AND ORDER** - 21

to the idea Pulsar approached Bazzill to market or that Bazzill knew its creation of the Sharebook would cause harm in Idaho, where the Jones Affidavit expressly provides otherwise.  For this reason, Plaintiff cannot meet the purposeful availment requirement for specific jurisdiction.[15]

Even though Plaintiff has not demonstrated purposeful availment, the Court will consider whether Plaintiff has met the second requirement for personal jurisdiction that the plaintiff's claims arise out of or relate to the defendant's forum-related activities.  *Dole Food Co.*, 303 F.3d at 1111.  The Court must determine if the Plaintiff  would not have been injured "but for" Bazzill's conduct *in Idaho*.  *Rio Props.*, 284 F.3d at 1021; *Panavision*, 141 F.3d at 1322.  As explained by the Ninth Circuit, the "but for" test serves to maintain the important distinction between specific and general jurisdiction:

> The "but for" test is consistent with the basic function of the "arising out of" requirement-it preserves the essential distinction between general and specific jurisdiction. Under this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction.... The "but for" test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds,* 499 U.S. 585 (1991).  Although counsel for Bazzill acknowledged at the April 11, 2007 hearing that there are some Sharebooks being sold in Idaho stores, it is not Bazzill's conduct in Idaho that

---

[15]  Further, there is no evidence in the record or indication that Bazzill had any idea it would be required to litigate in Idaho issues related to its Sharebook project.  "A defendant who purposefully directs his actions at a resident of the forum has 'fair warning' that he may have to litigate there."  *California Software Inc. v. Reliability Research, Inc.*, 631 F. Supp. 1356, 1361 (C.D. Cal. 1986).

**MEMORANDUM DECISION AND ORDER** - 22

caused the harm to Plaintiff.  It is an independent sales representative who places items for sale in Idaho and Plaintiff's alleged injuries are not solely related to the sale of Sharebooks in Idaho, but also to the sales in other states.  Under these circumstances, Plaintiff has not demonstrated that it would not have been injured "but for" Bazzill's conduct in Idaho.  Accordingly, Bazzill's Motion to Dismiss is granted.

## IV.

## ORDER

Accordingly, IT IS HEREBY ORDERED:

1.   Defendant Pulsar Ecoproducts, LLC's Motion to Dismiss Plaintiff' Complaint (Docket No. 12), in which Defendant Bazzill Basics has joined (*see* Docket No. 18), is GRANTED, in part, and DENIED, in part, as set forth above.  Plaintiff's unjust enrichment and unfair competition claims are dismissed.  Plaintiff's fraud and trade secrets claims remain.

2.   Defendant Bazzill Basics Paper, Inc.'s Motion to Dismiss Plaintiff' Complaint (Docket No. 18) is GRANTED and all claims against it DISMISSED.



DATED:  **May 9, 2007**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER** - **23**